IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA ROBERTSHAW | : | CIVIL ACTION |
|  | : | NO. 11-7353 |
| v. | : |  |
|  | : |  |
| GARY PUDLES, et al. | : |  |

O'NEILL, J.                                                                                                          May 6, 2014

## MEMORANDUM

Now before me is Cerida Investment Corporation's motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure, Dkt. No. 180, plaintiff Barbara Robertshaw's response thereto, Dkt. No. 190, Cerida's reply, Dkt. No. 191, Cerida's supplemental brief, Dkt. No. 208, and Robertshaw's reply to Cerida's supplemental brief. Dkt. No. 211. For the following reasons I will deny Cerida's motion.

## BACKGROUND

The parties and the proposed intervenor are familiar with the facts of this litigation so a lengthy recitation is not necessary. In pertinent part, on August 5, 2013, following a bench trial and consideration of the parties' post-trial briefs (Dkt. Nos. 164, 165, 166 and 167) and oral argument (Dkt. No. 172), I granted plaintiff's request for declaratory relief against defendants Gary Pudles and Answernet and, relevant here, issued the following declarations:

> c. Cerida Investment Corp. does not possess the 12,704 shares of Answernet, Inc., that Gary Pudles and Betty Babjak claimed Cerida received as a result of an alleged assignment and exercise of the Waterside warrants;
>
> d. Cerida Investment Corp. does not possess the 18,148.02 shares of Answernet, Inc., that Gary Pudles and Betty Babjak claimed Cerida received as a result of an alleged assignment and exercise of the Progress Capital warrants;

>   e.    Cerida Investment Corp. does not possess the 27,493.3 shares of Answernet, Inc., that Gary Pudles and Betty Babjak claimed Cerida received as a result of an alleged assignment and exercise of the BF/PC warrants;

Dkt. No. 176 at ECF p. 1-2; see also Dkt. No. 175 at ECF pp. 45-60.

Cerida now moves to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure. In its motion Cerida asserts that it is:

>   owned fifty percent by Plaintiff [Barbara Robertshaw] and fifty percent by Defendant Gary Pudles. Cerida's President is Gary Pudles, a Defendant in this litigation. Cerida's Secretary is Defendant Betty Babjak. Defendant Gary Pudles and Plaintiff's father, William Robertshaw, make up the Board of Directors. Cerida and Defendant Answernet share nearly all their backoffice operations, such as insurance, accounting, information technology, buying, and sales.

Dkt. No. 180 at ECF p. 4. Cerida argues that it was not on notice that its rights to the above-listed Answernet shares were at risk in the instant litigation between its two owners "until the Court invalidated the shares in its August 5, 2013 Order. Prior to that point, [it asserts,] the only Cerida shares that Plaintiff had put at issue were the 12,704 shares (3%) of AnswerNet stock underlying the warrants transferred by Waterside Capital." Id. at p. 6. Cerida contends that "even as to these 12,704 shares, ownership was only questioned in the limited context of Plaintiff's allegations of fraud based on Plaintiff's misperception that Cerida could not own its shares if it did not have physical share certificates." Id. It further asserts that "[u]nder these circumstances, Cerida reasonably was not aware that the Court would invalidate such an overwhelming amount of its AnswerNet shares, based on pre-2007 ownership transactions that even Plaintiff herself never put at issue." Id. Cerida therefore contends that its filing of its motion to intervene only eleven days after the issuance of the Court's August 5, 2013 Order represents only a negligible delay that does not prejudice the parties in the present litigation.

Dkt. No. 180 at ECF p. 7.

Cerida asserts that it had "good reason" to delay in seeking to intervene because of various representations plaintiff's counsel made in a July 2012 discovery hearing. Id. at p. 6-7. Cerida states that it "watched as Pudles and AnswerNet attempted to obtain discovery on the ownership of the shareholdings other than the 3% at issue, only to be refused that discovery, and then given Plaintiff's assurance on the record that 'there's no issue involving Cerida in this case.'" Id. at p. 7, quoting Dkt. No. 50, Hrg. Tr. July 19, 2012 27:19-24; and citing Dkt. No. 45. But at that hearing, plaintiff's counsel further explained that "no issue . . . has been raised *by the complaint* or the answer and affirmative defenses of AnswerNet that has any possible bearing on Cerida's internal information." Dkt. No. 50 at 27:21-24 (emphasis added). In November 2012, almost four months after that discovery hearing, Robertshaw amended her complaint to include allegations that Cerida did not own all of the shares it claimed in Answernet. See Dkt. No. 86 at ¶ 25 ("The Answernet Capitalization table that Defendants Pudles and Babjak provided falsely asserts that Cerida owned 62,579 common shares of Answernet, and that Answernet had a total of 423,396 issued shares outstanding."); ¶ 27 (Pudles and Babjak "knew that Answernet had never issued any shares at all to Cerida, and that there were not 423,396 issued shares outstanding."); ¶ 34 ("At the Annual Meeting of the Shareholders that was held on December 15, 2011, Defendants Betty Babjak and Gary Pudles submitted a document entitled 'List of Shareholders of Answernet, Inc.', which also falsely asserted that Cerida owned 62,579 common shares of Answernet, and that Answernet had a total of 423,396 issued shares outstanding."); ¶ 35 (Pudles and Babjak "knew that Answernet's stock ledger did not contain any record of the shares that were allegedly owned by Cerida, and that there were not 423,396 issued shares outstanding."); ¶ 36 (Pudles and Babjak "knew that Answernet had never issued any shares at all

to Cerida."); ¶ 40 ("Answernet's counsel provided a document purporting to show warrant transactions which allegedly resulted in Cerida's obtaining the 62,579 common shares of Answernet which Defendants Betty Babjak and Gary Pudles falsely claimed Cerida owned.").

Finally, Cerida contends that the parties would not be prejudiced by Cerida's intervention because

> other Defendants have expressed an intention to file a motion to stay judgment, just as Cerida has, pending the filing of motions under Federal Rules of Civil Procedure 52 and 59. These motions will challenge the same basic holding that Cerida wishes to challenge with respect to the invalidation of over Cerida's shares, and the resulting consequences of that holding on each of the separate parties.

Id. at p. 8.[1] Thus, Cerida insists that its intervention "would not appreciably extend the litigation or complicate the matters facing the Court and the current parties to the case." Id.

## STANDARD OF REVIEW

Rule 24 provides that a non-party may intervene in a pending litigation as of right in certain circumstances or with the Court's permission in others. Fed. R. Civ. P. 24(a) and (b). "Intervention, whether by right under Rule 24(a) or by permission under Rule 24(b), must be timely." Gen. Refractories Co. v. First State Ins. Co., No. 04-3509, 2012 WL 262647, at *7 (E.D. Pa. Jan. 30, 2012). "Timeliness of an intervention request 'is determined by the totality of the circumstances.'" In re Cmty. Bank of N. Va., 418 F.3d 277, 314 (3d Cir. 2005), quoting U.S. v. Alcan Aluminum, Inc., 25 F.3d 1174, 1181 (3d Cir. 1994). A trial court's determination of timeliness is a discretionary determination. Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 369 (3d Cir. 1995). "Among the factors to be considered are:

---

[1] Indeed, on September 3, 2013, defendants filed a motion seeking to open the judgment to allow additional discovery, a new trial on the issue of Answernet's capital structure, and or/amendment of the Court's filings of fact and conclusions of law. See Dkt. No. 192. I am issuing an opinion and order denying that motion simultaneously with this decision.

(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." Id. (citations omitted).  Delay "should be measured from the point at which the applicant knew, or should have known, of the risk to its rights." Mountain Top Condo Ass'n, 72 F.3d at 370, quoting Alcan, 25 F.3d at 1183.  "The point at which the applicant should have known its rights were at risk is usually a factual determination." Alcan, 25 F.3d at 1183.  Moreover "[p]ost-judgment intervention is justified only under 'extraordinary circumstances.'" Haymond v. Lundy, No. 99-5048, 2002 WL 31149289, at *3 (E.D. Pa. Sept. 26, 2002), quoting Del. Valley Citizens' Council for Clean Air v. Pa., 674 F.2d 970, 974 (3d Cir. 1982).  However, "where a party induces an applicant to refrain from intervening and there is reasonable reliance, the applicant's motion should not fail on timeliness grounds." Alcan, 25 F.3d at 1183.

Because, as is further set forth below, I find that Cerida's motion is not timely it is unnecessary to conduct a broader analysis under Rule 24(a) or (b).

## DISCUSSION

I find that Cerida's motion to intervene is not timely because Cerida should have known that its rights were at risk by no later than November 5, 2012, when Robertshaw filed her amended complaint.  Cerida's "lack of notice" argument fails for the same reasons that I have set forth in my denial of Pudles's and Answernet's motion for a new trial in this matter.  Cerida argues that "the first possible suggestion that Cerida's ownership of *all* of its shares may be at issue, did not come until a month after the trial." Dkt. No. 18 at ECF p. 8.  I disagree.  Plaintiff's amended complaint includes averments that clearly placed Cerida's ownership stake at issue in this litigation.  For example, it alleges that the document purporting to be the list of shareholders of Answernet which was presented to Robertshaw at the December 15, 2011 annual shareholder meeting "falsely asserted that Cerida owned 62,589 shares of Answernet."  Dkt. No. 86 at ¶ 34.

In her amended allegations, Robertshaw asserted that, at that time, defendants Pudles and Babjak "knew that Answernet had never issued any shares at all to Cerida." Id. at ¶ 36. She further alleged that "the 12,704 shares of Answernet that Cerida claims to have obtained from the Waterside Warrants constitute part of the 62,579 common shares . . . that [Pudles and Babjak] falsely claimed Cerida owned. Id. at ¶ 42; see also id. at ¶¶19-21, 25-27, 35, 40-41, 44-45, 47-48. Her amended complaint was filed nearly four months after the July 2012 discovery hearing in which plaintiff's counsel asserted that there was "no issue involving Cerida in this case." Dkt. No. 50, Hrg. Tr. July 19, 2012 27:19-24. Plaintiff's counsel's representations at the July 2012 discovery hearing are not sufficient to permit Cerida to argue that this was a situation where it was "induce[d] to refrain from intervening and there [was] reasonable reliance" because when it was filed, the amended complaint supplanted the prior one, rendering obsolete the representations at the July 2012 discovery hearing. Alcan Aluminum, 25 F.3d at 1183; see also W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 171 (3d Cir. 2013) ("[T]he amended complaint 'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.'").[2]

Cerida also argues that even the Court's May 23, 2013 Order specifying that

---

[2] Further, Cerida's assertion to the contrary, the Court's July 20, 2012 discovery order, Dkt. No. 45, did not prevent defendants "from obtaining key discovery, including discovery of Cerida's own corporate documents, that would have demonstrated Cerida's ownership of all of its Answernet shares." Dkt. No. 180 at ECF p. 12. On November 16, 2012, after plaintiff filed her amended complaint, then-Magistrate Judge L. Felipe Restrepo entered an order, Dkt. No. 91, granting an earlier motion by Pudles to compel discovery, Dkt. No. 66, in which Pudles had argued, inter alia, that "Pudles is severely prejudiced and hampered in his ability to properly pursue his counterclaim and prepare his defenses in this action without the requested documents. Pudles and Answernet produced documents from 1998 and Plaintiff should be compelled to do the same." Dkt. No. 66 at ECF p. 4, ¶ 14. If defendants believed thereafter that plaintiff was in violation of the November 16, 2012 order or was in violation of her obligation to supplement her prior discovery responses pursuant to Rule 26(e) of the Federal Rules of Civil Procedure as a result of the amendments to her complaint, they could have moved the Court to compel plaintiff to produce further discovery. Defendants did not.

> the party's post-trial briefing shall point to specific documents in evidence that corroborate their position as to the shares they control in Answernet, including but not limited to those documents that: 1) Demonstrate the assignment or legal transfer to that party (or any entity that a party claims entitlement to vote the shares of) of any warrants for Answernet shares from any other person or entity. Reference to these documents shall be made by exhibit number.

Dkt. No. 159, "did not reasonably suggest to Cerida that it should seek to intervene, as the context of the Order reflected that it was directed *only* at the claim Plaintiff had brought against the defendants already in the case." Dkt. No. 180 at ECF p. 8 n.1. I find this argument unavailing. As described above, the amended complaint is rife with allegations by plaintiff that Cerida did not own any of the shares that Pudles and Babjak (both officers of Answernet and Cerida) represented that Cerida owned. Cerida therefore should have known that its interests were implicated when plaintiff filed her amended complaint.

Cerida and Answernet's operations, stakeholders and interests are sufficiently intertwined that any claim that Cerida was unaware of the issues in this case is simply not plausible. Indeed, in its reply brief, Cerida asserts that "Pudles has been the President of Cerida since its inception, and as such, has taken numerous actions on behalf of the corporation that are consistent with, and customary to, the office of the President." Dkt. No. 191 at ECF p. 6. Cerida also contends that, on its behalf, "Pudles previously has entered into property leases, insurance agency engagements, and financial transactions – and most importantly, has hired counsel to represent Cerida's interests." Id. Cerida's delay in not moving to protect those rights until after a decision had been rendered following the bench trial in this matter is therefore not justified. See Del. Valley Citizens' Council, 674 F.2d at 974-75 ("that appellants knew or should have known of the pendency of this lawsuit at an earlier time and failed to act at that time to protect their interests weighs heavily against the timeliness of these motion"); see also Choike v. Slippery Rock Univ.

of Pa. of the State Sys. of Higher Educ., 297 F. App'x 138, 141-42 (3d Cir. 2008) ("The District Court certainly did not abuse its discretion in determining that [the proposed intervenor] knew or should have known of the risk to their rights eleven months before they filed their Motion.") (internal quotation and citation omitted); Haymond, 2002 WL 31149289, at *3-4 (finding motion to intervene was untimely because proposed intervenor, inter alia, "waited for two weeks after the court's Final Judgment/Distribution Order to file its motion despite knowledge of its potential risk for more than two years" and no extraordinary circumstances existed to justify intervention).[3]

---

[3] In addition to timeliness, a litigant seeking to intervene as of right pursuant to Rule 24(a) must also establish: "(2) a sufficient interest in the underlying litigation, (3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and (4) that the existing parties to the action do not adequately represent the prospective intervenor's interests." N.C.A.A. v. Governor of N.J., No. 12-4344, 2013 WL 1303816, at *1 (3d Cir. Apr. 2, 2013) (citations omitted). Even if Cerida could show that its intervention request was timely, I would still deny its motion to intervene because it has not shown that the parties to the litigation were unable to adequately represent its interests.

Cerida contends that "Pudles may have some overlapping interests with Cerida, but he [ ] cannot represent Cerida's unique interests in his capacity as an individual defendant." Dkt. No. 180 at ECF p. 11-12. I disagree.

> The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interest of the present parties. If the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not adequately represented. If his interest is identical to that of one of the present parties, or if there is a party charged by law with representing his interest, then a compelling showing should be required to demonstrate why this representation is not adequate.

Mountain Top Condo. Ass'n, 72 F.3d at 368-69 (3d Cir. 1995). I find that Cerida has not made a compelling showing that Pudles – its president and a fifty percent owner – has not adequately represented Cerida's interest in his efforts to convince the Court that the shares that Cerida purports to hold in Answernet were validly issued. See Estate of Kelly ex rel. Gafni v. Multiethnic Behavioral Health, Inc., No. 08-3700, 2009 WL 2902350, at *8 (E.D. Pa. Sept. 9, 2009) (finding existing party who owed fiduciary duty to proposed intervenor adequately represented the intervenor's interests); Jones v. Prince George's Cnty., Md., 348 F.3d 1014, 1019 (D.C. Cir. 2003) (upholding district court's determination that fiduciary duty between litigant

-8-

Cerida has not offered a compelling reason for its delay in seeking intervention. It does not assert that it was not aware of the suit or the claims asserted in the suit. This omission is understandable since, as it concedes in its motion, defendants included Pudles, its president, a fifty percent owner and a member of its board of directors and Babjak, its corporate secretary. Dkt. No. 180 at ECF p. 4. Ultimately I find unpersuasive Cerida's assertion that it was not "reasonably aware that the Court would invalidate . . . its Answernet shares based on pre-2007 ownership transactions that [Robertshaw] had never put at issue." Dkt. No. 180 at ECF p. 6. Accordingly, I will deny its motion to intervene.

An appropriate Order follows.

---

and proposed intervenor established adequacy of representation even though intervenor claimed that fiduciary had "made a series of strategic blunders that demonstrate her inadequate representation"); see also Commw. of Pa. v. Rizzo, 530 F.2d 501, 506 (3d Cir. 1976) ("We also reject any implied contention that representation becomes inadequate whenever the representative is unsuccessful in urging a position:  adequate representation may or may not be successful representation.").